García, Plaintiff and Appellee, *v.* Municipal Assembly of Cayey, Defendant and Appellant.

Appeal from the District Court of Guayama in Certiorari Proceedings.

No. 2561.—Decided May 12, 1922.

Taxes—Municipal Ordinance—Involuntary Servitude—Admission to Public Shows.—The involuntary servitude referred to in the Thirteenth Amendment to the Constitution is not involved in a municipal ordinance requiring all owners of public shows to buy stamps issued by the municipality as a means of collecting a tax and to affix the same to the admission tickets under penalty of fine or imprisonment. A violation of the ordinance would consist, not in failing to perform a service, but in selling a ticket without the stamp.

Id.—Id.—Capitation Tax—Luxury Tax.—A municipal ordinance imposing a tax on all persons who attend public entertainments does not impose a capitation tax but a luxury tax and is not unreasonable.

The facts are stated in the opinion.

*Mr. M. Marcos Morales* for the appellant.

*Mr. B. Fernández García* for the appellee.

Mr. Justice Wolf delivered the opinion of the court.

The Municipal Assembly of Cayey passed an ordinance imposing a tax on the sale of theatre tickets similar to the ordinance passed by Mayagüez in the case of the *Mayagüez Show Company* v. *Municipal Assembly of Mayagüez, ante,* p. 416. Some of the questions raised in the present case were disposed of in that appeal and other municipal cases then decided. The court below in this case annulled the ordinance.

We incline to agree with the appellant that if the court took the complaint as true without proof and the answer denied the facts, an error was committed. However, as the judgment must be reversed on other grounds, we shall not examine the record minutely to see if the appellant is right.

Similarly, with regard to whether certiorari was the proper writ, we think the appellant is wrong in maintaining the contrary, but as we find the certiorari did not lie on the facts, we shall not consider the question at length.

Similar considerations apply to whether the suit was brought against the proper persons. It would seem that when it is sought to annul an ordinance the municipality itself is a necessary party.

The principal question to be discussed in this case is whether this ordinance is void and unconstitutional as imposing an involuntary servitude on the owners of theatres or other public shows by requiring them to collect a tax under a penalty of fine and imprisonment if they failed to do so. More particularly, the ordinance requires the owner of a theatre to buy stamps and to have them attached to the tickets sold to the patrons of the theatre, under penalty of fine and imprisonment.

The ordinance further provides that these stamps shall be sold by the owner of the theatre simultaneously with the sale of the tickets.

There is, however, also a section of the ordinance which prohibits every showman or any of his employees from tak-

ing in any money or letting any one enter the theatre without having paid the tax.

Now, we may doubt whether a man may be punished for failing to keep a supply of stamps on hand or for failing to purchase the stamps in anticipation of the sale of the tickets. But the attack is not made on these lines and these provisions of the ordinance may be regarded as superfluous. What the ordinance requires is that no tickets should be sold unless the stamp is paid. This is a familiar way, with more or less formalities, of collecting a stamp tax. The violation of the ordinance would consist, not in failing to perform a service, but in selling a ticket without the stamp. This would seem to be a sufficient answer to the alleged involuntary servitude. But we shall also examine to a limited extent what is meant by involuntary servitude. We transcribe 12 C. J. 937, par. 446:

"By the thirteenth amendment to the constitution of the United States, it is provided that 'neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.' The leading purpose of this amendment was to effect the abolition of African slavery in the United States. But the addition of the words 'involuntary servitude' to the prohibition of the amendment gave it a broader scope, and it has been applied to any servitude in fact involuntary, no matter under what form such servitude may have been disguised. Thus it has been held to apply to slave customs prevailing among the uncivilized tribes of Alaska; to involuntary servitude under the guise of an apprenticeship; and to render void all statutes or contracts providing for a state of peonage, such as has existed in China, in Mexico and portions of the United States acquired from Mexico, and more recently under statutes of various states of the Union. The constitutional provision does not render void a statute which makes it a criminal offense to obtain money or property or employment in consideration of a contract to perform labor or services, with intent at the time to injure or defraud the employer. But if the statute goes further and makes a mere breach of the contract by a failure to perform the services prima facie evidence of an intent to defraud,

it is void. And, in general, such statutes are void wherever the offense created by them is committed merely by the breach of a contract or the failure to pay a debt. The constitutional guaranty against involuntary servitude, however, does not prevent the enactment of a law requiring the performance of labor in the public service, as in working the public roads, or otherwise in lieu of taxes; or in granting exclusive rights to carry on certain kinds of business, when they are necessary or proper to effectuate a purpose which has in view the public good. Neither does it invalidate a statute providing for imprisonment for contempt of court, except where the statute provides for imprisonment at hard labor. Nor does it invalidate a covenant in a deed of land in fee by which a grantee covenants for himself, his heirs and assigns, to pay a perpetual yearly rent.

''The service of seamen is regarded as exceptional, and accordingly seamen who have voluntarily entered into a contract for a period of service are held to have surrendered for the time their personal liberty, so that neither the contract itself nor a statute authorizing it constitutes a violation of the guaranty against involuntary servitude. There is such a violation, however, where seamen who have not entered into a voluntary contract are forced to labor on American vessels.''

The violation of a constitutional municipal ordinance is a crime and the punishment imposed is a specific exception to involuntary servitude so that the only question is whether the duties imposed by this ordinance constitute involuntary servitude. As pointed out in *Robinson* v. *Baldwin,* 165 U. S. 275, involuntary servitude does not apply to a customary service like that imposed on sailors, and services which have been considered as exceptional from time immemorial shall not be regarded as within the purview of the amendment. More particularly, other cases show the servitude must be of the person. In other words, in general, that one person is subjected to the immediate will of a master. There are other cases that perhaps fall within the intendment of the amendment, but we find no case that says that the requirement of a single service or similar services like those involved in this case shall be considered as involuntary servi-

tude. This consideration would apply even to the duty attempted to be imposed of keeping a supply of stamps on hand.

Furthermore, we doubt if these services could be really considered involuntary. If the owner does not choose to aid the government in collecting this form of revenue and objects to seeing that a stamp is attached to every ticket when sold, he may abandon his business. We agree with the court that this would be a very disagreeable choice, but this is a clear mode of escaping the servitude. At least this reasoning is applicable to the prohibition of selling a ticket without the stamp. As was said long ago in *McCulloch v. Maryland*, 4 Wheaton, 316, the power to tax includes the power to destroy, but the light duties imposed on the owner of a theatre in this kind of taxation could not be considered so onerous as to involve even a possibility that he should abandon his business.

This prohibition or regulation of selling a ticket without the stamp is the essence of the ordinance and within the powers, police or otherwise, of the municipality. The exaction of this tax involves the exercise of the same dominant power as when a license is required before beginning business. It is an exercise of power, perhaps, of a different quality, but it is a similar exercise of sovereignty.

The appellee also maintained that the ordinance was unreasonable, but the test seemed to be that it put duties on individual citizens in requiring them to pay this kind of stamp tax. As we pointed out in *Mayagüez Show Co. v. Mayagüez,* stamp taxes of this kind are a familiar mode of taxation and was the method followed in part in the Federal Tax Laws during the war. In the absence of a clear authority to the contrary we feel bound to hold that this luxury tax, like a similar internal revenue tax, is not unreasonable because of its form of imposition.

Even though falling on individuals who are required to

pay a stamp tax, this excise is not a capitation or toll tax, as appellee maintains. It is a tax for the use or purchase of a ticket and not imposed directly on the individual, nor does it require services of him, because he is not bound to purchase the ticket.

The appellee also said the penal clause of the ordinance was void. Perhaps, no penalty could be imposed for failure to keep a supply of stamps on hand, but we incline to the view that an owner of a theatre might be fined because he sold a ticket without a stamp tax being paid. The Municipal Law, section 58 A, authorizes a fine for violation of municipal ordinances, and this kind of a tax would seem to be within the police power conferred on the municipality. See for analogy *People* v. *Garzot,* 24 P. R. R. 215, where it was decided that a municipality had a right to impose a license tax for individual shows. In any event the question of the penalty was not touched upon by the court below. This is a certiorari to test the ordinance and not a prosecution for violation of an ordinance. Whatever doubts we may have should be reserved for a proper case after due argument.

Other questions as to the nature of the tax and the manner of the passing of the ordinance, raised in the court below but not decided, have been discussed by us in *Fantauzzi* v. *Municipal Assembly of Arroyo, ante,* p. 390, and the other municipal cases decided that day.

The judgment must be reversed and the petition dismissed.

*Reversed.*

Chief Justice Del Toro and Justices Aldrey and Hutchison concurred.

Mr. Justice Franco Soto took no part in the decision of this case.